Filed 9/14/22  P. v. Figueroa CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060017 |
| v. | (Super. Ct. No. C-78146) |
| ROBERT PHILLIP FIGUEROA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, James Edward Rogan, Judge.  Affirmed.

Dawn S. Mortazavi, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Daniel Rogers, Assistant Attorney General, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

\*       \*       \*

Robert Phillip Figueroa appeals from an order denying his petition for resentencing under Penal Code former section 1170.95 (now § 1172.6).[1]  He contends the trial court erred by denying the Petition without first issuing an order to show cause and holding a hearing at which evidence could be presented.  We disagree.

Figueroa was convicted of conspiracy to commit murder which required the jury to find he had the specific intent to commit murder.  That intent finding precludes eligibility for resentencing under section 1172.6 as a matter of law.  We reject Figueroa's suggestion that the passage of time between his entry into the conspiracy and the actual killings cast doubt on his intention at the relevant time.  The current law requires only that an aider and abettor like Figueroa intended to kill at the time he or she aided and abetted, not at the time of the killing itself.  We therefore affirm.

## FACTS

Figueroa was convicted by a jury in 1990 of conspiracy to commit murder, two counts of first degree murder with a multiple murder special circumstance, and 11 counts of willful, deliberate, and premeditated attempted murder.  He was sentenced to life in prison without the possibility of parole. We affirmed the convictions.  (*People v. Figueroa* (June 30, 1992, G010268, G010371) [nonpub. opn.] (*Figueroa I*).)

---

[1]       Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6.  (Stats. 2022, ch. 58, § 10.)  The renumbered statute does not significantly change the review process.  All further statutory references are to the Penal Code.

As relevant here, *Figueroa I* explained that Figueroa and his friends were from an area occupied by the 5th Street gang and were either present or past members of that gang in September 1989. The 5th Street gang and the 17th Street gang were rivals.

On September 10, 1989, the nephew of Figueroa's codefendant, Louis Valadez, was wounded in a drive-by shooting; the 17th Street gang was blamed. Five days later, Figueroa and Roman Menchaca encountered some women they associated with 17th Street; Figueroa promised to pay the gang a visit later that evening. (*Figueroa I, supra,* G010268, G010371.)

The attack, however, did not occur until September 16, 1989. People were gathered in front of a house in 17th Street territory. A large truck, with its lights off, approached the group, and multiple shots were fired before the truck sped off. A four-year-old and a 17th Street gang member were killed. Six others, including a two-year-old, were wounded but survived. (*Figueroa I, supra,* G010268, G010371.)

Menchaca and another male were identified as the shooters. Valadez was identified as the driver of the truck, and Figueroa was identified as a passenger. Two witnesses later saw Valadez driving the truck with four others, including Figueroa and Menchaca, in the truck's bed. They heard someone yell, "We got 'em!" (*Figueroa I, supra*, G010268, G010371.)

In 1990, Figueroa was convicted of conspiracy to commit murder (count 1; § 182.1), two counts of first degree murder (counts 2 and 3; § 187, subd. (a)), and 11 counts of willful, deliberate, and premeditated attempted murder (counts 4-14; §§ 664, 187, subd. (a)). The jury also found a multiple murder special circumstance to be true. Figueroa was sentenced to 25 years to life on count 1, and life without the possibility of parole on counts 2 and 3.[2] The sentences on counts 4 through 14 were stayed.

---

[2] In 2018, the Governor commuted Figueroa's sentences on the two murder counts from life without the possibility of parole to life with the possibility of parole. (*People v. Figueroa* (July 24, 2020, G058208) [nonpub. opn.] (*Figueroa II*).)

3

In 2019, Figueroa filed a petition for resentencing on the murder counts under former section 1170.95 (now § 1172.6).  The trial court denied the petition on the ground that the legislation enacting section 1170.95 was unconstitutional.  In *Figueroa II,* we reversed that ruling and remanded the petition to the trial court for further proceedings on the merits.

Following remand, Figueroa was represented by counsel.  The court denied the petition on the merits without holding an evidentiary hearing after finding Figueroa had not established a prima facie case for relief.  The court reasoned that the record of conviction established Figueroa acted with intent to kill as a matter of law, and was thus ineligible for resentencing relief.  The court noted Figueroa's conviction for conspiracy to commit murder, as well as the special circumstances finding that attached to his two murder convictions, required the jury to find he acted with a specific intent to kill.

## DISCUSSION

1.    *Resentencing Law*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437), amended the felony murder rule and eliminated the natural and probable consequences doctrine as a means of proving murder.  Specifically, section 189, subdivision (e), provides that in cases where a death occurs during the perpetration or attempted perpetration of a felony listed in section 189, subdivision (a), the defendant is liable for murder only if the person was the actual killer, the person acted with intent to kill in aiding, assisting or soliciting the killer, or if the person "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."  (*Id.* at subd. (e)(3).)

SB 1437 provided a remedy for persons previously convicted of felony murder or murder under a natural and probable consequences theory.  Both sections 1170.95 and 1172.6 permit an individual to petition the sentencing court to vacate the

4

conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of SB 1437's changes to the definition of the crime. Section 1172.6, subdivision (b)(1), provides a petition for relief must include: "(A) A declaration by the petitioner that the petitioner is eligible for relief under this section, based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [¶] (C) Whether the petitioner requests the appointment of counsel." (§ 1172.6, subd. (b)(1)(A)-(C).)

A prima facie showing of entitlement to relief is established if the petitioner demonstrates there is sufficient evidence, which if believed, would demonstrate he is entitled to be resentenced. (*People v. Drayton* (2020) 47 Cal.App.5th 965, 977 (*Drayton*), abrogated on another point in *People v. Lewis* (2021) 11 Cal.5th 952, 963 (*Lewis*).) In assessing the issue, the trial court looks at documents that are part of the record of conviction, including the complaint, information or indictment filed against the petitioner, the verdict form or factual basis documentation for a negotiated plea, and the abstract of judgment. (*Lewis* at pp. 970-971; *People v. Verdugo* (2020) 44 Cal.App.5th 320, 329-330, abrogated on another point in *Lewis*.) The court may also consider the appellate court's opinion on review as part of the record of conviction. (*Lewis* at p. 972.)

However, at the prima facie showing stage "the trial court should not weigh evidence or make credibility determinations." (*Drayton, supra*, 47 Cal.App.5th at p. 968.) Instead, "the trial court should accept the assertions in the petition as true unless facts in the record conclusively refute them as a matter of law." (*Ibid; People v. Duchine* (2021) 60 Cal.App.5th 798, 811-815 (*Duchine*).)

"If, accepting the petitioner's asserted facts as true, he or she meets the requirements for relief listed in section 1170.95, subdivision (a), then the trial court must issue an order to show cause." (*Drayton, supra,* 47 Cal.App.5th at p. 968.)

If an order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the

5

petitioner on any remaining counts. (§ 1172.6, subd. (d)(1).) If the parties do not stipulate to vacating the conviction and resentencing the petitioner, the prosecution and the petitioner may offer new or additional evidence to meet their respective burdens. (§ 1172.6, subd. (d)(2) & (3)). It is during that phase of the proceeding that the court may weigh the evidence as it reaches a decision. (*Duchine*, *supra,* 60 Cal.App.5th at pp. 814-815.)

        2.      *Whether Figueroa Made a Prima Facie Showing*

        Figueroa argues that he was convicted of murder under a natural and probable consequences doctrine because the jury instructions may have led jurors to convict him without finding that he personally harbored an intent to kill as required by current law.[3]

        Specifically, Figueroa highlights two instructions. First, CALJIC No. 3.00 as given, which instructed the jurors that "[t]hose who aid and abet the [commission] [or] [attempted commission] of the crime" are "equally guilty" as "[t]hose who directly and actively [commit] [or] [attempt to commit] the act constituting the crime." And second, CALJIC No. 3.02 as given, which instructed the jurors that one who aids and abets is not only guilty of the particular crime that he knows his confederates are contemplating, but is also liable for the "natural and probable consequences of any criminal act" that he intended to aid and abet, and then instructs the jury that it must determine whether the

---

      [3]      Figueroa argues this court "recognized" he was convicted under a natural and probable consequences theory in *Figueroa I*. Not so. The quote relied upon by Figueroa involved an assessment of his contention that he was entitled to an additional jury instruction to make clear he was not liable for acts or crimes of his coconspirators that were not a natural and probable consequence of the conspiracy. In rejecting that assertion, this court noted Figueroa was not convicted of any crimes that were not a natural and probable consequence of the conspiracy: "it is a natural and probable consequence of a conspiracy to kill with rapid fire weapons that the persons targeted and people nearby will be killed or wounded." That statement is not dispositive on the issue which is currently before us. (*Figueroa I*, *supra,* G010268, G010371.)

6

murders and attempted murders charged in counts 2-14 are "a natural and probable consequence of such originally contemplated crime."

Figueroa's problem, as he acknowledges, is that the trial court concluded his resentencing petition failed as a matter of law due to his conspiracy conviction, which specifically required the jury to find he acted with the intent to kill. (See, *People v. Swain* (1996) 12 Cal.4h 593, 607.) Consistent with that requirement, the jury was instructed with CALJIC No. 6.10: "A conspiracy is an agreement entered into between two or more persons with the specific intent to agree to commit the public offense of murder and with the further specific intent to commit such offense, followed by an overt act committed in this state by one [or more] of the parties for the purpose of accomplishing the object of the agreement."[4]

Figueroa nonetheless argues the jury's finding of an intent to kill is ambiguous because the jury instructions included CALJIC No. 8.80: "If you find beyond a reasonable doubt that the defendant was a co-conspirator or an aider or abetter . . . but you are unable to decide which, then you must also find beyond a reasonable doubt that the defendant intended either to kill a human being or to aid another in the killing of a human being in order to find the special circumstance to be true." According to his argument, this instruction muddies the issue because as this court noted in *Figueroa I*, it requires the jury to "only decide whether an aider and abettor or a conspirator had the intent to kill if it cannot determine which the defendant is. That is incorrect, of course, since the juror must so find in *either* case if the defendant is not the killer." (*Figueroa I*, *supra*, G010268, G010371.)

In making this argument, Figueroa seemingly ignores the fact that this court also found that flaw was harmless here because "[u]nder other appropriate instructions,

---

[4]  The jury was also instructed with the 1989 version of CALJIC No. 3.31, which specified that "[t]he crime of conspiracy requires the specific intent to commit the crime of murder."

7

these defendants were convicted of conspiracy to commit murder and that offense required an intent to kill." (*Figueroa I*, *supra*, G010268, G010371.) In other words, the conspiracy conviction established the intent to kill independently of CALJIC No. 8.80, and rendered moot any defect in the instruction.[5]

Alternatively, Figueroa relies on *People v. Croy* (1985) 41 Cal.3d. 1, 16-18 (*Croy*), for the proposition that "a conviction for conspiracy to commit murder does not necessarily prove a defendant intended to commit the murder when it was actually committed." As Figueroa interprets it, the Supreme Court in *Croy* reasoned that "[b]ecause the actual killing happened hours after the defendant conspired to commit murder and the court could not confirm that the killing happened in furtherance of the conspiracy, the court could not confirm—solely on the basis of the conspiracy conviction—that Croy harbored malice at the time of the killing."

However, while *Croy* and this case both involve conspiracies that commenced the day before the killing happened, the facts of the two cases are distinguishable. In *Croy*, the first overt act of the conspiracy was an unidentified member's proclamation, made while most members of the group were at a party, that either, "'I'm going to shoot him,'" or "'I'm going to shoot the sheriff.'" (*Croy, supra*, 41 Cal.3d at p. 7.) The court's recitation of facts suggests the comment may have been borne of anger after police arrived twice in response to complaints about the party. (*Ibid.*)

Thereafter, the conspirators visited Croy's residence and a liquor store where Croy had had a disagreement with the clerk earlier that night. Some members of

---

[5]     Figueroa argues CALJIC No. 8.80 was erroneous because "[l]ay jurors would have no way of knowing which defendant must intend to kill or whether all of them must intend to kill," and "[t]he instruction could be read to mean that if any of the defendants was an accomplice, the prosecution must prove that at least one of them intended to kill." After reviewing the entire instruction in its proper context, we disagree.

the group wanted to "party," while others wanted to drink beer or shoot deer. (*Croy, supra*, 41 Cal.3d at pp. 7-8.) Although Croy appeared to resolve his disagreement with the clerk while at the store, some of his companions engaged in disruptive behavior, stole items, and assaulted the clerk, all of which caused the clerk to flee and call for the police. The killing occurred only after Croy and some of the others had fled the scene, were chased by police, and some of them holed up in a cabin where one or more of them engaged in a shootout with police—resulting in the death of one officer. (*Id.* at pp. 7-10.) Croy, who was wounded and apprehended, later informed doctors in the emergency room that he "got shot . . . trying to rob a liquor store." (*Id.* at p. 11.)

This case is clearly different. The alleged conspiracy here was to commit murder in retaliation for a perceived gang shooting. The conspirators never deviated from that plan, and Figueroa was involved from the beginning to the end. Our record provides no support for the argument that the murders committed were different than those originally intended.

We also reject Figueroa's related suggestion that the passage of time is enough to call into question whether he intended to kill at the time the murders took place and would therefore justify granting him a hearing on this petition.

Section 189, subdivision (e)(2), as amended by Senate Bill 1437, allows for a murder conviction in a felony murder case when "[t]he person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree." The statute on its face requires an intent to kill at the time the defendant aids, abets, counsels, commands, induces, solicits, requests, or assists the actual killer, not necessarily at the time of the killing itself.

As discussed above, to convict Figueroa of that conspiracy to commit murder, the jury was required to find he intended to commit murder and agreed with one or more other persons to commit the murder, followed by an overt act by one or more of

9

the conspirators in furtherance of accomplishing the murder. At the time Figueroa entered the conspiracy, the jury found he intended to kill. And by entering the conspiracy, he "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer." (§ 189, subd. (e)(2).) Thus, the jury found Figueroa possessed the requisite intent to kill at the requisite time—when he aided or abetted the actual killer. He is therefore ineligible for resentencing as a matter of law.

Finally, we agree with the Attorney General's assertion that this analysis applies equally to Figueroa's convictions for attempted murder.[6] As the Attorney General explains: "By finding [Figueroa] guilty of the murders, the jury necessarily found that he personally harbored an intent to kill in aiding and abetting the shooting. Because the convictions resulted from the same act—the shooter firing the gunshots from [Figueroa's] car into the group of moviegoers—the jury's finding of express malice for [Figueroa's] murder convictions must apply to the attempted murder convictions as well, thereby making appellant ineligible for resentencing on his attempted murder convictions."

---

[6] Or more accurately, we would agree if the issue were ripe. Figueroa's sentencing on the attempted murder charges was stayed, and thus there is no sentence to recall in connection with those counts.

10

## DISPOSITION

The postjudgment order is affirmed.



GOETHALS, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.